WELCH, Judge.
 

 James Shouldis appeals from the circuit court’s denial of his Rule 32, Ala. R.Crim. P., petition. The petition sought postcon-viction relief from his March 7, 2005, conviction of first-degree sexual abuse, a violation of § 13A-6-66(a)(3), Ala.Code 1975, and his sentence on May 16, 2005, to five years’ imprisonment.
 

 Direct
 
 Appeal
 
 [1]
 

 Shouldis was indicted for two counts of sexually abusing his step-granddaughter, E.D. The two counts were identical. They charged:
 

 “James Shouldis, whose name is otherwise unknown to the Grand Jury other than as stated,
 

 “COUNT I
 

 “he, being sixteen years of age or older, did knowingly subject [E.D.], who at the time was less than twelve years of age, to sexual contact, in violation of § 13A-6-66(a)(3) of the Code of Alabama,
 

 “COUNT II
 

 “he, being sixteen years of age or older, did knowingly subject [E.D.], who at the time was less than twelve years of age,
 
 *755
 
 to sexual contact, in violation of § 13A-6 — 66(a)(3) of the Code of Alabama,
 

 “against the peace and dignity of the State of Alabama.”
 

 (Record on direct appeal, CR-04-1907, at CR. 18.)
 

 It appears from the record on direct appeal that Shouldis relied upon the contents of the State’s “Notice of Contents of Out-Of-Court Statements by [E.D.] Pursuant to Alabama Code Section § 15-25-35,” upon a conversation his counsel had had with the district attorney, and upon “discovery matters that were received and information at the preliminary hearing” to apprise him of the specific charges against which he was to defend. (Record on direct appeal, CR-04-1907, R. 95.) From the above sources, Shouldis understood that the alleged sexual abuse took place over a two- to three-week span of time in November and December 2001. He believed that one count of the indictment concerned two or three incidents of sexual abuse taking place in a chair or recliner and that the other count concerned an alleged incident that occurred one time in E.D.’s bedroom.
 

 The victim, E.D., was 10 years old at the time of trial. E.D. testified that she thought she was seven years old when the sexual abuse occurred but she did not remember exactly when it happened. (Record on direct appeal, CR-04-1907, at R. 105.) E.D. testified that she spent every other weekend with Shouldis — her step-grandfather, and Nana — her grandmother. However, E.D. stayed with the couple consecutive weekends in December 2001. E.D. testified at trial that “[w]henever [she] would go to [Shouldis’s] house, after [she] would get out of the bathtub ... [E.D.] would go and sit in [Shouldis’s] lap and he would give [her] a bad touch.” (Record on direct appeal, CR-04-1907, at R. 104-05.) E.D. further testified that when she sat in the recliner with Shouldis to watch television together, he would touch her private part through her clothing. Contrary to her assertions in the “Notice of Contents of Out-Of-Court Statements” that she was sexually abused as many as three times, E.D. testified at trial that she was sexually abused “maybe three, four, maybe five times” while sitting in Shouldis’s lap. (Record on direct appeal, CR-04-1907, at R. 117.)
 

 E.D.’s best recollection was that the sexual abuse took place over a period of “a couple of weeks,” “around Christmas time” but that she “really [couldn’t] remember.” (Record on direct appeal, CR-04-1907, at R. 106, 117, 118.) E.D. could not remember if she had been sexually abused multiple times per visit or one time per visit. E.D. testified that she thought the last time Shouldis touched her private part was “a week before” she was taken to the hospital to be examined by a doctor. Other witnesses testified that E.D. was examined by a doctor on January 4, 2002.
 

 E.D. testified that she did not remember playing a game called “the claw” with Shouldis. (Record on direct appeal, CR-04-1907, at R. 111.) E.D. did not remember ever climbing onto Shouldis’s lap while he was asleep. (Record on direct appeal, CR-04-1907, at R. 111.)
 

 The charge of sexual abuse that allegedly took place in E.D.’s bedroom was designated as count two by the trial court. This count was dismissed pursuant to Shouldis’s motion for a judgment of acquittal made at the end of the State’s case. The remaining count, count one, concerned an occurrence or occurrences of sexual abuse that took place while Shouldis and E.D. were sitting together on a recliner.
 

 Shouldis testified regarding two occasions when, he says, he accidently touched E.D.’s groin. The first occasion occurred in the “late summer, maybe August or
 
 *756
 
 September” of 2001. (Record on direct appeal, CR-04-1907, R. 270.) He stated that at E.D.’s invitation he was playing a game they called “the claw.” He described it as a game derived from a movie he and E.D. had seen. When they played, Shouldis’s “hand goes wild and you’ve got to get away from ‘the claw.’ ” (Record on direct appeal, CR-04-1907, R. 268.) He stated that he accidently touched E.D.’s “groin area” once during this game. (Record on direct appeal, CR-04-1907, R. 269.)
 

 The second incident occurred around October 2001. Shouldis stated that one time as he slept in his chair, E.D. startled him by jumping into his lap. Shouldis said that as a reflex he grabbed his own “groin area” and in doing so he accidently “caught [E.D.] right there in [her] groin hard.” (Record on direct appeal, CR-04-1907, R. 271.)
 

 The trial court’s jury instructions included the following:
 

 “To convict, the State must prove beyond a reasonable doubt each of the following elements of sexual abuse in the first degree: No. 1, that the Defendant James Shouldis subjected [E.D.] to sexual contact; No. 2, that [E.D.] was less than 12 years old at the time; No. 3, that [Shouldis] was 16 years of age or older at the time; and No. 4, that the [Shouldis] acted intentionally.”
 

 (Record on direct appeal, CR-04-1907, at R. 335.)
 

 “[Shouldis] is not on trial for any act not charged in the indictment and you may not find him guilty on the basis of any act not charged in the indictment.
 

 “To the contrary, if you find [Shoul-dis] guilty, you must do so, if at all, solely on the basis that the prosecution has proved beyond a reasonable doubt [Shouldis] did, in fact, do the
 
 things
 
 that the indictment accuses him of doing.”
 

 (Record on direct appeal, CR-04-1907, at R. 336-37.) (Emphasis added.)
 

 “Now, all 12 of you must agree before you can reach a verdict in this case. Your verdict must be the verdict of each and every juror. It cannot be a majority. It cannot be a consensus. It cannot be a plurality. It must be the verdict and decision of each one of you individually.”
 

 (Record on direct appeal, CR-04-1907, at R. 337.)
 

 “Now, I will go over the verdict form with you ... and it either is We, the jury, find the Defendant James Shoul-dis, guilty of sex abuse as charged in the indictment,’ or ‘We, the jury, find the Defendant James Shouldis not guilty.’ ”
 

 (Record on direct appeal, CR-04-1907, at R. 338.)
 

 “The second responsibility is once all 12 of you have agreed upon a verdict, the foreperson will sign his or her name on the line associated with the verdict upon which all 12 of you agree.”
 

 (Record on direct appeal, CR-04-1907, at R. 339.)
 

 “MR. POWELL [defense counsel]: The only thing that I would request the Court do in connection with this, at the beginning of this trial, the Court announced to the jury that Mr. Shouldis stood before this court for trial on a two-count indictment which is now only a one-count indictment and I think that the jury’s entitled to know one of those counts has been dismissed.
 

 “MS. ROSEONY [the prosecutor]: Judge, I think they can reasonably infer it has been dismissed. You just charged them on one count.
 

 “THE COURT: That’s noted and overruled. I’m not gonna address — • they’ve — you told them in closing.
 

 
 *757
 
 “MR. POWELL: Yes, sir. I did tell them in closing that—
 

 “THE COURT: And I read them only one count and the verdict form only showed one count.
 

 “MR. POWELL: All right. My objection’s overruled?
 

 “THE COURT: Yes. And noted.”
 

 (Record on direct appeal, CR-04-1907, at R. 340-41.)
 

 The jury returned a verdict of “guilty of sex abuse 1st as charged in the indictment” and the record reflected “that all 12 answered in the affirmative that it was their verdict.” (CR. 51 and Record on direct appeal, CR-04-1907, at R. 342.)
 

 Shouldis appealed his conviction. His conviction was affirmed.
 
 Shouldis v. State,
 
 953 So.2d 1275, 1282 (Ala.Crim.App.2006). Of the claims presented on direct appeal, three are relevant to the review of his appeal from the denial of his Rule 32 petition.
 

 1.
 

 Shouldis claimed on direct appeal that the trial court erred in refusing to require the State to elect which of the alleged instances of sexual abuse it sought to prove.
 
 [2]
 

 We held that Shouldis’s claim was not preserved. Moreover, we continued with the following dicta:
 

 “Here, the evidence clearly indicated that the victim and her sister stayed at Shouldis’s house every other weekend and on assorted holidays from 1997— when the victim’s father died — until the abuse was discovered near the end of 2001. The testimony further indicated that the victim spent nearly every weekend in November and December at Shouldis’s house in 2001. Clearly the evidence in this case indicated that Shouldis had ‘virtually unchecked access to the child’ in the manner contemplated by
 
 [R.L.G. v. State,
 
 712 So.2d 348, 355 (Ala.Crim.App.1997), aff'd, 718 So.2d 117 (Ala.1998), and
 
 R.A.S. v. State,
 
 718 So.2d 108 (Ala.Crim.App.1997), aff'd, 718 So.2d 117 (Ala.1998).]”
 

 Shouldis v. State,
 
 953 So.2d at 1282.
 

 This Court stated that the State had presented only “generic evidence” against Shouldis; therefore, “the limited abrogation of the election rule as set out in
 
 R.L.G.[ v. State,
 
 712 So.2d 348, 355 (Ala.Crim.App.1997), aff'd, 718 So.2d 117 (Ala. 1998),] and
 
 R.A.S. [v. State,
 
 718 So.2d 108 (Ala.Crim.App.1997), aff'd, 718 So.2d 117 (Ala.1998),] was applicable.”
 
 Shouldis v. State,
 
 953 So.2d at 1282. Thus, pursuant to
 
 R.L.G.,
 
 the jury should have been provided a “unanimity instruction” “‘that it can find the defendant guilty only if it unanimously agrees that he committed
 
 all the incidents described by the victim.’
 
 ”
 
 Ex parte R.L.G.
 
 712 So.2d 372, 373 (Ala.1998) (quoting
 
 R.L.G. v. State,
 
 712 So.2d 348, 367) (Ala.Crim.App.1997)) (emphasis added).
 

 2.
 

 Shouldis claimed on direct appeal that the trial court committed reversible error because it did not give a specific unanimity instruction to the jury before deliberations. We held that this claim was not preserved for appellate review.
 

 3.
 

 Shouldis claimed on direct appeal that
 
 trial counsel was ineffective
 
 because,
 
 *758
 
 among other claims, counsel failed to require the State to elect which incident of sexual abuse it was pursuing, as set forth under no. 1 above, and for failing to object to the trial court’s failure to instruct the jury that it had to unanimously “find Shouldis guilty on all of the incidents under the ‘either-or’ rule (if it applied)” as set forth under no. 2 above. (Shouldis’s brief on direct appeal at p. 66.)
 

 This Court found that Shouldis had not preserved his claims of ineffective assistance of counsel for review on direct appeal. However, we noted in a footnote that Shouldis could properly pursue his ineffective-assistance-of-counsel claim in a Rule 32, Ala. R.Crim. P., postconviction motion.
 

 Shouldis’s conviction and sentence were affirmed on direct appeal.
 
 Shouldis v. State,
 
 953 So.2d at 1282. This Court issued its certificate of judgment on October 13, 2006.
 

 Rule 32 Petition
 

 Shouldis timely filed his Rule 32 petition on October 26, 2006. See Rule 32.2(c), Ala. R.Crim. P. He claimed in his petition that his trial counsel was ineffective based on the following:
 

 (1)Counsel failed to request that the trial court give a unanimity instruction to the jury, and counsel failed to object to the jury charge, which did not contain a unanimity instruction. Specifically, he asserts that this court determined on direct appeal that his was a “non-election” case. Therefore, Shouldis asserts, and this Court acknowledged on direct appeal, that he was entitled to a unanimity instruction in a “non-election” case. Thus, according to Shouldis, his counsel’s performance was deficient and he suffered prejudice because “the jury rendered a verdict without having to unanimously agree that Shouldis committed all of the incidents described by the victim.” (CR. 6.)
 

 (2) Counsel failed to move for a dismissal or otherwise present or preserve the issue of a material fatal variance.
 

 (3) Counsel failed to properly object to the State presenting evidence of other alleged bad conduct to prove the offense charged in the indictment.
 

 (4) Counsel failed to timely file a motion asking the trial court to require the State to make an election under the doctrine of election concerning which incident of sexual abuse the jury should consider in deliberations and counsel failed to object to the jury charge. Specifically, Shouldis asserts that the State’s evidence disclosed two or more offenses arising from separate incidents, yet the State was not required to elect which act or incident was to be considered by the jury in their deliberations. Therefore, it is unclear which incident the conviction is based upon or whether it was unanimous.
 

 (5) Counsel failed to preserve the cumulative-error issue for review.
 

 On February 22, 2007, an evidentiary hearing was conducted on Shouldis’s Rule 32 petition. Shouldis’s trial counsel, James C. Powell, testified at the hearing that he “was under the impression that [Shouldis was charged based on] one incident [of sexual abuse] in the bedroom and one incident [of sexual abuse] in a chair in the living room, not plural ‘incidents,’ in the chair.” (R. 28.) Powell stated that he viewed the case as being “[t]wo counts of sex abuse, period.” (R. 14.) He stated that one of those allegations was dismissed, so, after the State rested, he thought he was defending only one remaining instance of alleged sexual abuse. Powell stated that “there was evidence of other incidents that came in. ... But I never thought I was having to defend against
 
 *759
 
 those.” (R. 11-12.) He stated that the testimony at trial was that there were “two, three, maybe up to five” separate incidences of sexual abuse committed by Shouldis “in a November, possibly December time frame.” (R. 12.) He “objected that these other two or three incidents that were mentioned weren’t [Ala. R. Evid,] 404(b)-type evidence” and because he had not been notified by the State before trial, as required by Rule 404(b), Ala. R. Evid., of its intent to offer additional alleged incidents of sexual abuse. (R. 12.)
 

 Powell testified that the State “could have elected as which of the ... alleged incidences which happened in the chair that my client was charged with.” (R. 30.) He testified that although there was more than one “lengthy discussion” with the trial court about the necessity of the State’s identifying “the time that these incidents were supposed to have occurred,” he did not file a motion requesting that the State be required to elect the incident it sought to submit to the jury. (R. 10-11.) However, Powell also testified that he thought he had preserved the election issue for appellate review, but according to the Alabama Court of Criminal Appeals, he did not. (R. 23.)
 

 Powell testified that he was not under the impression that the case was being tried as a “resident-abuser” case where “generic evidence” should be allowed. In fact, Powell testified that “I had never heard of the term ‘resident-abuser’ ... until I read the opinion of the Alabama Court of Criminal Appeals [in
 
 Shouldis v. State,
 
 953 So.2d 1275 (Ala.Crim.App.2006),]” and he stated that he had never heard the State use the term “generic evidence” and it “never used that argument in this case.” (R. 13-14.) He stated that had he known from the indictment that “this was a resident abuser case” he probably would not have represented Shouldis. (R. 14.) Powell asserted that he was “misled by the State charging two single incidents and later claiming it was a resident abuser case.” (R. 22.)
 

 Powell testified that neither during nor after the charge conference, did the State, the trial court, or he request that the jury receive a unanimity charge. Powell stated that, at the time, he did not “even know what it was.” (R. 16.) He did not object to the trial court’s failure to give a unanimity charge to the jury. He testified that he did not “really have any reason for not requesting [a unanimity instruction] other than [he] did not understand the law.” (R. 35.) However, he stated that he was “misled by the indictment and the presentation of evidence.” (R. 35.)
 

 Nearly 11 months after the hearing, on December 12, 2007, the circuit court entered the following order denying the petition:
 

 “This matter is before this Court on remand by the Court of Criminal Appeals instructing this Court to make specific findings of fact on defendant’s [Ala. R.Crim. P.] 32 Petition for Relief from Conviction. This Court will address the five (5) grounds raised by the defendant in support of his claim of ineffective assistance of counsel.
 

 “1. Failure to ask for unanimity instruction. The Court at trial instructed the jury on one count of sexual abuse. The court instructed the jury that the defendant could be found guilty on that count only if each member of the jury found beyond a reasonable doubt the
 
 allegations
 
 claimed. Further, the jury was instructed that the defendant could only be found guilty of the charge in the indictment and not based on any other act or wrong. There was no reason for defense counsel to seek the instruction now requested by the defendant. The
 
 *760
 
 court instructed the jury as to unanimity.
 

 “2. Failure to raise fatal variance in the indictment. The Court has reviewed the indictment and finds there is no fatal variance; therefore, the defense counsel had no grounds to support such a motion.
 

 “8. Failure to object to evidence of other bad conduct. The Defense did raise such issues and the Court allowed it under [Ala. R. Evid.] 404(b).
 

 “4. Failure to require the State to elect. There was nothing for the State to elect. The State proceeded at trial on two instances of claimed sexual abuse. One instance was dismissed by the Court.
 
 The other was presented to the jury, with specific information as to location, and actions by the defendant.
 
 The ‘resident abuser’ issue was never raised by either party at any time during the trial. The State did not try to proceed under this theory so there was nothing to elect.
 

 “5. Failure to preserve cumulative error issue. This issue appears to have been withdrawn by counsel at the start of the hearing on this matter. Therefore, there is nothing for this Court to address.
 

 “This Court must also note that
 
 the case was tried on the issue of credibility of the witnesses.
 
 It was the word of the defendant against the word of the victim and her mother. The defendant, at trial, denied the allegations. He did admit that a touching of the victim may have occurred in the chair as described by the victim but that it was inadvertent. The jury chose to believe the victim’s testimony over that of the defendant. The undersigned presided over the trial. The defense counsel fought valiantly for the defendant. The defendant is a personal friend of his trial counsel. It is understandable that the trial counsel feels a sense of ‘letting his friend down.’ However, this Court can find none of the allegations raised by defendant now would have increased the likelihood of a different result.
 

 “Therefore, defendant’s Petition for Relief is DENIED.”
 

 (Supplemental Record at CR. 8-9.) (Emphasis added.)
 
 [3]
 

 Shouldis appealed from the circuit court’s ruling.
 

 “In order to prevail on an ineffective assistance of counsel claim, a defendant must meet the two-pronged test set out by
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 

 “ ‘First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable.’ ”
 

 
 *761
 

 McNair v. State,
 
 706 So.2d 828, 889 (Ala.Crim.App.1997). “[W]hen reviewing a circuit court’s denial of a Rule 82 petition, this Court applies an abuse-of-discretion standard. See
 
 McGahee v. State,
 
 885 So.2d 191 (Ala.Crim.App.2003).”
 
 Whitman v. State,
 
 903 So.2d 152, 154 (Ala.Crim.App.2004).
 

 On appeal, Shouldis contends that the circuit court erred in denying his petition for the following reasons.
 

 Shouldis contends that the circuit court abused its discretion in denying his ineffective-assistance-of-counsel claim based on counsel’s failure to seek an unanimity charge. As we stated in dicta on direct appeal, this case involved generic evidence. Therefore, Shouldis was entitled to a unanimity charge.
 

 Generally, “ ‘ “ ‘[w]here the evidence discloses two or more offenses growing out of distinct and separate transactions,’ ” ’” a trial court will grant a defense motion asking for the State to be instructed to choose, or to “elect,” which specific incident it wishes to submit to the jury.
 
 R.L.G. v. State,
 
 712 So.2d at 355 (quoting
 
 R.A.S. v. State,
 
 718 So.2d at 114, quoting in turn
 
 Sparrow v. State,
 
 606 So.2d 219 220-21 (Ala.Crim.App.1992), quoting in turn
 
 Watkins v. State,
 
 36 Ala.App. 711, 711, 63 So.2d 293, 293-94 (1953)).
 
 “ ‘ “
 
 ‘The doctrine of election operates to protect a defendant from being prosecuted for more than one offense in the same count of an indictment.’ ” ’ ”
 
 Id.
 

 However,
 
 R.L.G.
 
 held that the strict election rule does not apply in cases involving generic evidence
 
 [4]
 
 and resident child molesters.
 

 “[T]he general election rule ... does not apply in child molestation cases involving purely generic evidence. ...
 

 “ ‘... [W]e adopt for purposes of this case, the “either/or” rule, but
 
 only
 
 as that rule is modified for generic evidence: where the evidence of more than one incident of sexual molestation to a child victim by a resident child molester is purely generic and where
 
 “there is no reasonable likelihood of juror disagreement as to particular acts,
 
 and the only question [for the jury] is whether or not the defendant in fact committed
 
 all
 
 of [the incidents],” the trial court should instruct the jury that it can find the defendant guilty only if it
 
 unanimously
 
 agrees that he committed
 
 all
 
 the incidents described by the victim.
 
 [People v.] Jones,
 
 51 Cal.3d [294] at 322, 270 Cal.Rptr. [611] at 627-28, 792 P.2d [643] at 659 [ (1990) ].’ ”
 

 Ex parte R.L.G.
 
 712 So.2d at 372-73 (quoting
 
 R.L.G. v. State
 
 712 So.2d at 367) (emphasis on “only” original; other emphasis added).
 

 Thus, the “either-or” rule provides essentially that the State must either elect upon which single act or occurrence it is relying, or the trial court must give a specific unanimity instruction to the jury. The unanimity instruction informs the jury that each juror must determine that
 
 “all”
 
 the alleged incidents of sexual abuse occurred.
 
 R.L.G. v. State,
 
 712 So.2d at 367 (emphasis added).
 
 [5]
 

 
 *762
 
 Here, the indictment returned against Shouldis is a barebones accusation that Shouldis committed the crime of first-degree sexual abuse upon E.D. Testimony of more than one incident of sexual abuse was presented to the jury. E.D.’s testimony was that she was sexually abused three to five times in Shouldis’s recliner — sometimes after a bath and sometimes as they watched television. Shouldis stated that he accidently touched E.D.’s private parts two times — neither incident occurred as described by E.D. The trial court charged the jury that a guilty verdict had to be unanimous and had to be based “solely on the basis that the prosecution has proved beyond a reasonable doubt the Defendant did, in fact, do the
 
 things
 
 that the indictment accuses him of doing.” (Record on direct appeal, CR-04-1907, at R. 336-37.) (Emphasis added.)
 

 The charge to the jury that it had to unanimously find “the
 
 things
 
 that the indictment accuses him of doing” does not ensure that the jury unanimously found Shouldis guilty of “all” the incidents or even one single incident described by the victim. Jurors could have voted for guilt based on different instances of sexual abuse, i.e., after a bath, while watching television, while playing “the claw,” or when E.D. jumped on Shouldis’s lap. There is no assurance of unanimity as to any one instance or to all the instances. Therefore, contrary to the circuit court’s order, we do not believe that the jury was properly instructed as to unanimity.
 

 The State relies on
 
 R.L.G. v. State,
 
 712 So.2d at 366-69, in support of its contention that “the failure of trial counsel to request a unanimity instruction was
 
 harmless error,
 
 if any, because the only real issue was the credibility of the victim versus the credibility of the defendant.” (State’s brief at p. 11.) (Emphasis added.) We disagree with the State’s argument as it applies to this case. In
 
 R.L.G.,
 
 R.L.G. denied committing all the several alleged incidents of sexual abuse charged against him by the child victim. To return a guilty verdict, the jury had to unanimously disregard R.L.G.’s defense that none of the alleged incidents of sexual abuse occurred. By rejecting R.L.G.’s defense that he did not commit any of the alleged offenses, the jury had to believe the victim’s testimony that he committed all of the alleged incidents. Thus, the harmless-error analysis in
 
 R.L.G.
 
 rested on the condition that “the evidence in its entirety offered
 
 absolutely
 
 no possibility of jury disagreement regarding the appellant’s commission of any of these acts.”
 
 R.L.G. v. State,
 
 712 So.2d at 367-68. Specifically, the Court reasoned that because the case depended solely on the juror’s credibility choice, “[tjhere was absolutely no rational basis by which the jury could have found that the appellant committed one of the incidents but not the others.”
 
 R.L.G. v. State,
 
 712 So.2d at 369.
 

 Shouldis’s case differs from
 
 R.L.G.
 
 Here, E.D. stated that she was sexually abused as many as five times. Shouldis’s defense was that he accidently touched E.D. inappropriately only two times — once while playing “the claw,” and once as a reflex when E.D. jumped onto his lap. It may be inferred that Shouldis denied the incidents described by E.D. that allegedly took place in his recliner. Under these facts, the jurors could have returned a unanimous verdict of guilty while being divided in their opinions: some jurors may
 
 *763
 
 have believed that only “the claw” incident was an accident with no element of sexual gratification, but that the chair incident was sexual abuse; others may have believed that only the chair incident was a nonsexual accident, but that “the claw” incident was sexual abuse; while others may have believed other incidents of sexual abuse occurred as E.D. testified. It is impossible to tell whether the verdict was unanimous as to at least one incident or as to all. Therefore, the harmless-error analysis described in
 
 R.L.G.
 
 does not apply in the instant case.
 

 In dicta on direct appeal this Court determined that this case concerned a resident abuser. We now hold that at the trial on the merits the State presented generic evidence of sexual abuse committed by a resident abuser. Therefore, Shouldis was entitled to have the jury receive a specific unanimity instruction as was described in
 
 R.L.G.
 
 Trial counsel was deficient for failing to request such an instruction. Absent this instruction, we cannot say that Shoul-dis did not suffer prejudice because we cannot be assured that the jury verdict was unanimous as to a single incident or as to all the incidents.
 

 Therefore, for the reasons set forth above it is clear that counsel’s performance was deficient and that Shouldis was prejudiced by that deficient performance. Our holding pretermits review of other issues.
 

 Based on the above we find that the circuit court erred when it denied Shoul-dis’s Rule 32 petition. Accordingly, we reverse the circuit court’s judgment and remand this case for proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 McMILLAN, J., concurs.
 

 SHAW, J., concurs in the result.
 

 WISE, J., dissents, without opinion.
 

 BASCHAB, P.J., recuses herself.
 

 [1]
 

 . "The Court of Criminal Appeals can take judicial notice of its own records.”
 
 Ragland v. State,
 
 883 So.2d 730, 731 n. 2 (Ala.Crim. App.2003), citing
 
 Ex parte Salter, 520
 
 So.2d 213, 216 (Ala.Crim.App.1987).
 

 [2]
 

 . Specifically, Shouldis claimed that the holding in
 
 R.L.G. v. State,
 
 712 So.2d 348, 355 (Ala.Crim.App.1997), aff'd 718 So.2d 117 (Ala.1998), did not apply to his case because E.D. and he did not "reside” together. Therefore, according to Shouldis, it was necessary for the State to elect which alleged incident of sexual abuse the jury should consider. We found
 
 R.L.G.
 
 broad enough to include the facts of Shouldis’s case.
 

 [3]
 

 . The circuit court’s order is in conflict. In paragraph 1 it asserts that Shouldis’s jury did receive a unanimity instruction at trial. In paragraph 4 it asserts that one instance of sexual abuse was presented to the jury and that, therefore, no election was required by the State. By inference, where evidence of one instance of sexual abuse is submitted there is no necessity for a specific unanimity instruction as contemplated in
 
 R.L.G.
 
 In the final unnumbered paragraph before rendering judgment, the circuit court noted that Shoul-dis's case was "tried on the issue of credibility of the witnesses.” This would imply multiple incidences of sexual abuse were submitted to the jury. See discussion of
 
 R.L.G.
 
 below.
 

 [4]
 

 . “Generic evidence” in child sexual abuse cases is evidence of sexual abuse perpetrated upon a young child so often and in so many locations "by an abuser residing with the child ... that the young child loses any frame of reference in which to compartmentalize the abuse into ‘distinct and separate transactions.’ "
 
 R.L.G. v. State, 712
 
 So.2d at 356.
 

 [5]
 

 .
 
 R.A.S.
 
 "expanded] the 'either-or' rule [ (set forth in R.L.G.) ] to apply in cases involving generic
 
 and
 
 specific evidence.”
 
 Ex parte R.A.S.,
 
 718 So.2d 117, 123 (Ala.1998) (empha
 
 *762
 

 sis
 
 added).
 
 R.A.S.
 
 stated that, in a case involving generic and specific evidence, "[i]f the State chooses not to elect the specific act, the trial court must instruct the jury that all 12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt, thereby assuring a unanimous verdict on one criminal act.”
 
 Ex parte R.A.S.,
 
 718 So.2d at 122.